No. 106,792

In the Matter of BRIAN R. JOHNSON, *Respondent*.

(276 P.3d 213)

Opinion filed May 18, 2012.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Brian R. Johnson*, argued the cause pro se.

*Per Curiam*: This is a contested original proceeding in discipline filed by the office of the Disciplinary Administrator against the Respondent Brian R. Johnson of Lawrence, an attorney admitted to the practice law in Kansas in 1988.

On August 25, 2010, the office of the Disciplinary Administrator filed a formal complaint against Respondent, alleging violations of the Kansas Rules of Professional Conduct (KRPC) related to his representation of an arson suspect and her husband and his handling of a workers compensation matter while administratively suspended. Respondent filed an answer. The office of the Disciplinary Administrator filed an amended complaint on November 1, 2010. Respondent served a proposed plan of probation. A panel of the Kansas Board for Discipline of Attorneys held a hearing on April 27, 2011, where Respondent was personally present and represented by counsel. The Deputy Disciplinary Administrator orally amended the complaint, without objection, at the outset of the hearing.

The panel determined that Respondent violated KRPC 1.7(a)(2) (2011 Kan. Ct. R. Annot. 484) (concurrent conflict of interest), KRPC 5.5(a) (2011 Kan. Ct. R. Annot. 594) (unauthorized practice of law), Supreme Court Rule 208(c) (2011 Kan. Ct. R. Annot. 327) (failure to notify Clerk of change of address), and KRPC 8.4(c) (2011 Kan. Ct. R. Annot. 618) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The panel's Final Hearing Report

included the following findings of fact, conclusions of law, and recommendation to the court:

## "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

"1.    Brian R. Johnson (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 13245. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Lawrence, Kansas. . . . The Respondent was admitted to the practice of law in the state of Kansas on April 14, 1988.

"2.    In 2008, [J.G.H.] and her husband, [K.H.], owned a house in Jefferson County, Kansas, subject to a mortgage. [They] held a [homeowner's] insurance policy on the home.

"3.    On January 12, 2008, Mrs. [H.] purchased incendiary devices including firewood and matches. Thereafter, Mrs. [H.] set the Jefferson County, Kansas, home on fire. At the hearing on the Formal Complaint, Mr. [H.] testified that Mrs. [H.] told him why she set their home on fire. According to Mr. [H.], Mrs. [H.] burned the house because the house had been burglarized several times, that someone stood on their front porch and said that 'it would be a shame if the house burned down,' that Mrs. [H.] had been a crime victim in the past, that she did not want to be a victim again, and that she did not want to give 'them' the satisfaction of burning their house down.

"4.    The fire that Mrs. [H.] set caused $30,000-$60,000 in damage to the home.

"5.    Thereafter, a friend referred Mrs. [H.] to the Respondent for representation. Over time, Mrs. [H.] paid the Respondent approximately $20,000 for the representation.

"6.    Initially, the Respondent instructed Mr. and Mrs. [H.] to cooperate with the insurance investigation. However a few days later, the Respondent instructed Mr. and Mrs. [H.] to no longer provide any information to the insurance company regarding the fire.

"7.    The Respondent advised Mrs. [H.] that if someone filed a claim with the insurance company that Mrs. [H.] would go to jail for attempting to defraud the insurance company. The Respondent advised Mrs. [H.] that she needed to pay off the mortgage so that the bank holding the mortgage would not make a claim with the insurance company.

"8.    After Mrs. [H.] retained the Respondent to represent her in relation to any criminal proceedings brought against her as a result of the fire, the Respondent informed Mr. [H.] that he had certain rights under the insurance policy. The Respondent informed Mr. [H.] that he would represent Mr. [H.] with regard to the insurance policy. Mr. [H.] paid the Respondent an additional $5,000 for the representation associated with the insurance policy.

"9.    Mrs. [H.'s] interests and Mr. [H.'s] interests were in conflict. The Respondent failed to explain the conflict of interest to Mr. [H.] and Mrs. [H.]. The Respondent did not suggest to Mr. [H.] that he seek separate representation. The

Respondent did not seek or obtain written consent after consultation from Mrs. [H.] or Mr. [H.] for the conflicting representations.

"10. During the relevant time period, the Respondent was an employee of a law firm in Lawrence, managed by John M. Knox. In September or October, 2008, in accordance with firm policy, Mr. Knox reviewed 'pre-bills.' In so doing, Mr. Knox noticed that the Respondent had charged Mrs. [H.] for a 2 hour conference with Michael Hayes, the Jefferson County Attorney. The entry caught Mr. Knox' attention because by that time Mrs. [H.'s] case was no longer active and two hours seemed like an inordinately long meeting with a prosecutor.

"11. After taking note of the entry for a two hour meeting with Mr. Hayes, Mr. Knox called Mr. Hayes and asked him whether he had met with the Respondent. Mr. Hayes informed Mr. Knox that he had not spoken to the Respondent in months.

"12. Mr. Knox also asked the Respondent about the conference with Mr. Hayes. The Respondent indicated that he had, in fact, met with Mr. Hayes. The Respondent indicated that he billed two hours for the meeting because he had to drive to Jefferson County for the meeting and that Mr. Hayes was not immediately available and that the Respondent had to wait some time to meet with Mr. Hayes.

"13. Mr. Knox conducted a thorough review of Mrs. [H.'s] bill[s]. In so doing, Mr. Knox learned that Mrs. [H.'s] bills had never been sent to her.

"14. Based upon the statement made by Mr. Hayes that he had not seen the Respondent in months, in September or October, 2008, Mr. Knox terminated the Respondent's employment with his law firm.

"15. Following the termination of his employment, the Respondent failed to change his address with attorney registration.

"16. Thereafter, Mr. Knox called Mr. and Mrs. [H.] and asked them to meet with him regarding the Respondent. Mr. and Mrs. [H.] met with Mr. Knox. During that meeting, Mrs. [H.] indicated that that was the first time she had seen the bills associated with the Respondent's representation of her. Mrs. [H.] indicated that a number of entries on the bills were not accurate.

"17. Specifically, Mrs. [H.] indicated that she did not meet with the Respondent on July 26, 2008, a Saturday, for two hours.

"18. Mr. Knox refunded the fees that were held in the attorney trust account in Mr. and Mrs. [H.'s] name. Additionally, Mr. Knox suggested that they contact another lawyer who is also an accountant to audit the bills to determine what portion of the fees paid by Mr. and Mrs. [H.] was earned by the Respondent and what portion should be returned to Mr. and Mrs. [H.]. Mr. and Mrs. [H.] did not agree to do so.

"19. Later, Mrs. [H.] provided Mr. Knox with a letter demanding $190,000, which included a refund for all fees paid and also a payment for the full value of the house that Mrs. [H.] intentionally burned.

"20. For the compliance period ending June 30, 2009, the Respondent failed to comply with annual requirements of the Kansas Continuing Legal Education

Commission to maintain his law license. As a result, on October 6, 2009, the Kansas Supreme Court suspended his license to practice law.

"21. Despite the court's order of suspension, the Respondent engaged in the practice of law. Specifically, the Respondent entered his appearance before the Division of Workers' Compensation [on] behalf of Raymond Silva.

"22. On February 25, 2010, the Kansas Supreme Court reinstated the Respondent's license to practice law.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.7(a)(2), KRPC 5.5(a), KRPC 8.4(c), and Kan. Sup. Ct. R. 208, as detailed below.

"2. KRPC 1.7 provides:

'(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

. . . .

(2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by á personal interest of the lawyer.

'(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.'

With regard to the insurance policy, Mrs. [H.'s] interest was in conflict with Mr. [H.'s] interest. The rules do not permit the Respondent to represent clients with conflicting interests without taking certain steps. The Respondent failed to take the steps required by KRPC 1.7(b). Further, the Hearing Panel declines to conclude whether or not the representation was impermissible according to KRPC 1.7(b)(3). As such, the Hearing Panel concludes that the Respondent violated KRPC 1.7(a)(2).

"3. KRPC 5.5(a) prohibits the unauthorized practice of law. After the Kansas Supreme Court suspended the Respondent's license to practice law, the Respondent continued to practice law. Specifically, the Respondent entered his appearance before the Division of Worker's Compensation in behalf of Raymond Silva. As such, the Hearing Panel concludes that the Respondent violated KRPC 5.5(a).

"4. "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he billed [Mrs. H.] for 'Conference Client' on July 26, 2008, when he did not meet with Mr. or Mrs. [H.] and when he billed for a conference with County Attorney Hayes which did not occur. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c) by billing his client for conferences which he never held.

"5. Attorneys are required to notify the Clerk of the Appellate Courts of any change of address within 30 days. Kan. Sup. Ct. R. 208(c). The Respondent's employment with Mr. Knox' firm ended in September or October, 2008. As of July, 2009, the Respondent's registered address continued to be Mr. Knox' firm. Thus, the Hearing Panel concludes that the Respondent failed to properly notify the clerk of the Appellate Courts of his change of address within 30 days as required by Kan. Sup. Ct. R. 208(c).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to avoid conflicts of interest, his duty to the public to maintain personal integrity, and his duty to the legal profession to comply with the registration and annual requirements to maintain a license to practice law.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to his client and to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* The Respondent has previously failed to comply with the annual requirements to maintain his law license on five separate occasions. In 1989, the Respondent failed to pay the CLE fee and his license was suspended. In 1993, the Respondent failed to pay the CLE fee and his license was suspended. In 1995, the Respondent failed to complete the requisite CLE hours and his license was suspended. In 2000, the Respondent failed to pay the attorney registration fee and his license was suspended. In 2001, the Respondent failed to pay the CLE fee and his license was suspended.

"*Dishonest or Selfish Motive.* The Respondent billed for conferences with his client and with the County Attorney which he did not have. Including a false entry

in a billing statement is dishonest. Accordingly, the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty.

"*A Pattern of Misconduct.* The Respondent has engaged in a pattern of misconduct. For six separate reporting years, the Respondent has failed to comply with the annual requirements to maintain his law license.

"*Multiple Offenses.* The Respondent engaged in conduct that amounted to violations of multiple rules. Specifically, the Respondent violated KRPC 1.7, KRPC 5.5, KRPC 8.4, and Kan. Sup. Ct. R. 208. As such, the Hearing Panel concludes that the Respondent committed multiple offenses.

"*Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process.* At the hearing on the Formal Complaint, the Respondent failed to directly answer many of the questions posed to him. Throughout his testimony, the Respondent appeared to be evasive. The Respondent's evasive appearance is a deceptive practice.

"*Vulnerability of Victim.* Based upon their appearance before the Hearing Panel, the Hearing Panel concludes that Mr. and Mrs. [H.] were clearly vulnerable to the Respondent's misconduct.

"*Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law in 1988. Thus, the Respondent has substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the no mitigating circumstances present.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.'

'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be suspended from the practice of law in the State of Kansas for a period of one year. It does not appear that the Respondent made a recommendation as to the disposition of this case.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law in the State of Kansas for a period of six months. While it is clear to the Hearing Panel that the Respondent violated the Kansas

Rules of Professional Conduct cited, he was working with very difficult clients who were not immediately forthcoming with the facts that the Respondent needed to make decisions about representing them. Notwithstanding this, he was successful in keeping Mrs. [H.] from being charged with a crime during his period of representation. Additionally, by assisting Mr. and Mrs. [H.] with the insurance issue, he was able to prevent additional legal trouble for them. However, the Hearing Panel believes that suspension is warranted in this case as it will serve as a deterrent to others and it will ensure the Respondent's future compliance with the conflict and dishonesty rules."

Respondent filed exceptions to the panel's report. These exceptions included the following material:

"2. In paragraph 4 of the Conclusions of Law, the Board found that the evidence supported a finding that Respondent engaged [in] conduct that involved dishonesty when he billed for a conference with County Attorney Hayes which did not occur, and when he billed for a meeting with Mrs. [H.] on July 26, 2008 which did not occur. However, *there was a lack of any evidence that the conference with County Attorney Hayes did not occur. In fact, at the outset of the Final Hearing, the attorney for the disciplinary administrator withdrew allegation No. 10: falsely reported face to face meeting with Jefferson County Prosecutor on February 1, 2008.* Finally, paragraph 17 of the Findings of Fact the Board observed that the respondent billed for a meeting with Mrs. [H.] on July 26, 2008, is not supported by clear and convincing evidence because the client was never billed for that meeting according to testimony by Respondent's managing attorney John Knox. Moreover, *testimony established that the date of July 26th may have been an unintentional error.*

"3. In paragraph 16 of the Findings of Fact[,] the Board observed that Mrs. [H.] testified that when Mr. Knox showed her various billing that [it] was the first time she had seen bills associated with her case. The testimony established that, at the outset of the Respondent's representation, Mrs. [H.] requested that no bills be sent to her residence. Thereafter, the Respondent reviewed billings at his office during conferences. At the hearing, Mr. Knox testified that he did not believe Mrs. [H.'s] claim that she never saw the billings.

"4. In paragraph 2 of the Conclusions of Law and paragraph 9 of the Findings of Fact, the Board found that the evidence supported a finding, with regard to the insurance policy, that Mrs. [H.'s] interest was in conflict with Mr. [H.'s] interest. . . . To the contrary, the evidence supports a finding that no adverse or conflicting interest existed. Respondent testified that on or about January 25, 2008[,] that Safeco insurance investigator forwarded correspondence outlining the insured duties and forwarded a proof of loss form for both of the [H.'s] to sign. The Proof of loss form (for the purpose of providing the insurer with the formal claim) is documentation that an insurance company requires to support a formal claim. The proof of loss form requires both insureds [to] certify that the loss was

not done with intent to defraud[,] i.e.[,] the loss was not intentional[,] and [to] sign and swear that the information is accurate to the best of their knowledge. Intentional loss means any loss arising out of any act committed by or at the direction of any insured[,] with the intent to cause a loss. In sum, since both insured[s] must sign, there is no adverse or conflicting interest. The innocent spouse exception does not apply. Further, the respondent reasonably believed that he was able to provide competent and diligent representation to each affected client. In fact, the Board found the respondent's representation with the insurance issue was able to prevent additional legal trouble for the [H.'s]. Finally, while each affected client did not give informed consent, confirmed in writing, Mr. [H.] and firm manager attorney John Knox testified that two or more meeting[s] occurred where the possible conflict was discussed. The Respondent and Mr. Knox suggest[ed] to Mr. [H.] that he seek separate representation. In fact Mr. [H.] testified that as a result, he never considered filing any claim with Safeco or s[ought] separate representation.

"5. In paragraph 3 and 5 of the Conclusions of Law, the Board found that the evidence supported a finding that the respondent practiced law after being suspended and that he failed to notify the Appellate Courts of any change of address within 30 days. Granted, *the respondent practiced law after being suspended*[;] however, he was unaware of the suspension because a notice was not received. While *it appears the failure to receive notice was due to Respondent['s] failure to notify the Appellate Courts of any change of address*, the Respondent received his Bar card for 2009 on or before July 1, 2009[,] at his law office from the Supreme Court. The discrepancy cannot be reconciled. However, it questions the finding that the Respondent failed to notify the Appellate Courts of any change of address.

"6. The Board found that the evidence supported a finding that the Respondent failed to directly answer many of the questions posed to him. The Board felt the Respondent appeared to be evasive and that the evasive appearance is a deceptive practice. However, the Board cites to no specific instance or testimony to support this contention.

"7. The Board found that the Respondent made no recommendation as to the disposition of the case. To the contrary, Respondent requested probation and submitted a plan of supervision pursuant to Supreme Court rule.

"8. The Respondent received a Final Hearing Report wherein it reflected that Respondent's Exhibits 1 through 49 were admitted. The Final Hearing report filed with the Court does not reflect that finding.

"9. In paragraph 20 of the Findings of Fact[,] the Board observed that Respondent failed to comply with annual requirements of the Kansas Continuing Legal Education Commission. The Respondent's testimony indicates that *compliance was achieved on June 30, 2009.* However, due to a disruption at the CLE seminar on June 30th, Respondent notified the Bar Association that he could not take credit for one (1) hour of the seminar because he was not continually in the room. As a result, Respondent attended a seminar on July 15th to satisfy his

requirements. Thereafter, fees were paid to the CLE. Unfortunately, the late fee was omitted. Further, the Respondent received his Bar card for 2009 on or before July 1, 2009[,] at his law office from the Supreme Court following the payment of fees prior to July [1,] 2009. Yet Respondent failed to receive late fee notices from the CLE in spite of receiving the Bar card from the Kansas Supreme Court.

"10. In paragraph 7 of the Findings of Fact[,] the Board observed that Respondent advised that 'if someone filed a claim with the insurance company Mrs. [H.] would go to jail', and that 'Mrs. [H.] needed to pay off [the] mortgage [so that the bank holding the mortgage] would not make a claim with the insurance company[.'] Those statements are an [oversimplification] of the conversations. The testimony indicates that the clients were advised that making a claim against [an] insurance company certifies that the loss was not done with intent to defraud[,] i.e.[,] the loss was not intentional and you must sign and swear that the information is accurate to the best of [your] knowledge. Further, the testimony indicates that the clients were advised that CNB . . . as 'loss payee' is authorized to file claim under the mortgage. Paying the mortgage removed the status as 'loss payee[.'] Further, this discussion occurred at the time CNB . . . sent notice of default to the clients for failing to [safekeep] the property after the fire and notified the insurance company of their intent to make an insurance claim.

"11. In paragraph 15 of the Findings of Fact[,] the Board observed that Respondent failed to change his address with registration. Testimony establishes that Respondent paid all fees to the Supreme Court prior to July 1[,] 2009[,] and received his Bar card for 2009 on or before July 1, 2009[,] at his law office from the Supreme Court following his association with the Knox firm. *The office of registration had the requisite information concerning Respondent's address.*

"12. In paragraph 21 of the Findings of Fact[,] the Board observed that 'despite of the court's order of suspension, the Respondent engaged in the practice of law[.'] Testimony indicates that the Respondent never received notice from the Court. Once he received notice from the Division of Workers Compensation of his suspension, Respondent complied with the payment of late fees and sought reinstatement. [There] was never an instance where Respondent knowingly ignored the Court's Order.

"13. In sum, Respondent takes exception to the Boards['s] findings under the heading of American Bar Association Standards for Imposing Lawyer Sanctions to wit: Duty Violated as discussed above, Mental State as Respondent did not knowingly violate his duties, Injury as the Respondent did not cause actual injury to his client or legal profession, Dishonest or Selfish Motive as *Respondent did not include a false entry in a billing statement.*" (Emphasis added.)

In his brief to this court, Respondent collapses the above litany into two arguments: (1) Violations of KRPC 1.7(a)(2), KRPC 5.5(a), Supreme Court Rule 208(c), and KRPC 8.4(c) were not established by "substantial, clear, convincing, and satisfactory evidence"; and

(2) the panel failed to support its description of his performance at the hearing as "evasive" with specific examples from the record, meaning the aggravating circumstance of a deceptive practice during the disciplinary process was not demonstrated. Respondent's brief parrots many of the numbered exceptions.

### STANDARD OF REVIEW

In a disciplinary proceeding, this court considers the evidence, the findings of fact and conclusions of law of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *Lober*, 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]). When the court assesses the existence of clear and convincing evidence, it refrains from weighing conflicting evidence, assessing witness credibility, or redetermining questions of fact. See *In re B.D.-Y.*, 286 Kan. 686, 699, 187 P.3d 594 (2008).

With this standard of review as our guide, we address each of Respondent's arguments in turn.

### KRPC 1.7(a)(2)

KRPC 1.7(a)(2) prohibits representation of a client if it involves a concurrent conflict of interest. Such a forbidden conflict exists if there is a substantial risk that the representation of one client will be materially limited by the lawyer's responsibilities to another client. A lawyer cannot proceed in the face of such a conflict unless, among other things, each affected client gives informed consent, confirmed in writing. KRPC 1.7(b)(4) (2011 Kan. Ct. R. 484).

Respondent admits that he did not obtain an informed consent, confirmed in writing, from Mr. and Mrs. [H.]. He argues that no such consent was necessary because no concurrent conflict ever existed.

The evidence is undisputed that, at the same time Respondent was being paid to represent arson suspect Mrs. [H.]—who he knew had increased the policy limits on the couple's home and been videotaped buying accelerants or other incendiary materials on the day of the fire—he entered into representation of Mr. [H.] to research whether Mr. [H.] should pursue the homeowner's insurance proceeds as an innocent spouse. Respondent would have us overlook this concurrent representation of two clients who may not have been united in legal interest—either civilly or criminally—because he ultimately concluded that both spouses qualified as the "insured" under the homeowner's policy and that neither should sign the proof of loss form. He further argues that both spouses initially fell under law enforcement suspicion in the investigation of the house fire and that his good results should excuse any ethical lapses on the route to them.

None of Respondent's arguments is even minimally persuasive.

A lawyer is not permitted to risk *each* of his or her client's rights to disinterested, competent, timely legal advice on the chance or in the hope that a later factual discovery or crafty legal argument will eliminate a concurrent conflict between the clients. When Respondent took on representation of Mr. [H.], he owed him all of the same duties of loyalty and care that Respondent already owed Mrs. [H.]; and, as far as Respondent knew at the time, the spouses' factual circumstances and resulting legal positions were widely divergent and at least potentially at dramatic odds. Civilly, Respondent was still entertaining the possibility that Mr. [H.] could seek insurance reimbursement for the fire damage, regardless of Mrs. [H.'s] conduct. Criminally, Respondent knew that law enforcement had highly incriminating circumstantial evidence against Mrs. [H.]. There was no similar evidence against Mr. [H.]. Respondent's statement that both Mr. and Mrs. [H.] were in law enforcement's sights early on does nothing to reassure us on the conflict question. In fact, it intensifies our concern. A lawyer cannot jointly represent two criminal codefendants with inconsistent defenses. See *State v. Aguilar*, 290 Kan. 506, 513-15, 231 P.3d 563 (2010).

Another piece of evidence, one that Respondent has not contested or attempted to excuse, is even more damning. Respondent

accepted and followed Mrs. [H.'s] instruction not to disclose certain information to Mr. [H.], despite any bearing the information might have had on Mr. [H.'s] legal position. KRPC 1.7(a)(2) does not permit an attorney to suffer a unilateral information embargo by one client to compromise his advice to or strategies on behalf of another concurrent client. This particular evidence demonstrates that there was not merely a substantial risk that Respondent's representation of one spouse would be materially limited by his representation of the other; the risk was fully realized.

On this record, we adopt the panel's conclusion that Respondent violated KRPC 1.7(a)(2).

### KRPC 5.5(a) AND SUPREME COURT RULE 208(c)

KRPC 5.5(a) (2011 Kan. Ct. R. Annot. 594) prohibits the practice of law "in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." Respondent states in his exceptions and his brief to this court that he "practiced law after being suspended." He attempts to excuse this lapse by arguing that he was not aware of his suspension because he received no notice of it. Supreme Court Rule 208(c) (2011 Kan. Ct. R. Annot. 327), however, requires Kansas attorneys to notify the Clerk of the Appellate Courts of any change of address within 30 days; and Respondent admits in his brief that he "must take responsibility" for any discrepancy in his address records at the Clerk of the Appellate Courts' office.

Respondent's exceptions and brief attempt to take issue with the insufficiency of his 2009 continuing legal education compliance and failure to pay the CLE late fee that led to his administrative suspension. Regardless, his admission of practice while suspended and belated acceptance of responsibility for any infirmities in the Clerk's address records constitute clear and convincing evidence to support the panel's conclusion that Respondent violated KRPC 5.5(a) and Supreme Court Rule 208(c). We adopt that conclusion as our own.

### KRPC 8.4(c)

The panel also concluded that Respondent violated KRPC 8.4(c)

(2011 Kan. Ct. R. Annot. 618) by billing Mrs. [H.] for a July 26, 2008, client conference and an August 12, 2008, county attorney conference, neither of which occurred.

*The Client Conference*

The page in the Disciplinary Administrator's Exhibit 5 cited to support this panel conclusion is a statement "For Services Rendered Through 8/5/2008" containing a $300 charge for a 2-hour client conference on July 26, 2008. It also records that payment of the $300 charge was made by Mrs. [H.] on August 4, 2008.

The live testimony at the panel hearing on the occurrence of this client conference was, by Respondent's own admissions in his brief to this court and in oral argument, conflicting. Mrs. [H.] testified that she and her sister went to Respondent's office on that date, waited more than an hour for him in the firm's parking lot, called Respondent and was told that he needed to reschedule, and then left. Mr. Knox, the firm's managing partner and the person who first reported suspicions about Respondent's inflated or fraudulent billing to the Disciplinary Administrator, testified that he was in the office all day on July 26, 2008, a Saturday, and saw neither Mrs. [H.] nor Respondent there. Respondent, on the other hand, testified that he met with Mrs. [H.] and her sister on July 26, 2008, as previously scheduled. According to Respondent, Mrs. [H.] and her sister arrived at the office first, and then Mr. Knox called Respondent in.

Respondent takes the position in his brief that the evidence of the nonoccurrence of the July 26, 2008, client conference must be undisputed to meet the Disciplinary Administrator's clear and convincing burden of persuasion. He is incorrect. The fact that there is contrary evidence on a point does not automatically or as a matter of law render proof of one side of the story less than clear and convincing. See *B.D.-Y.*, 286 Kan. at 699. Were the legal rule as suggested by Respondent, any unscrupulous lawyer could insulate himself or herself from all disciplinary sanction merely by adopting a "deny, deny, deny" strategy.

In this case, by Respondent's own admission, the Disciplinary Administrator sponsored two witnesses who testified clearly that

Respondent never appeared at his office for a meeting with Mrs. [H.] and her sister on July 26, 2008. Disciplinary Administrator's Exhibit 5 completed the necessary proof on the KRPC violation, plainly demonstrating that Respondent nevertheless billed for a 2-hour meeting with Mrs. [H.] and that she paid his $300 fee for the client conference that never was.

On this record, we adopt the panel's conclusion that Respondent violated KRPC 8.4(c) by billing for a nonexistent July 26, 2008, client conference.

### The County Attorney Conference

The statement "For Services Rendered Through 8/5/2008" in Disciplinary Administrator's Exhibit 5 does not reflect a county attorney conference. However, four pages deeper into that exhibit, a document labeled "PRE-BILL" reflects a tentative $300 charge for a 2-hour county attorney conference on August 12, 2008. The date and time in the upper right-hand corner of this PRE-BILL is "10/16/08" and "10:46 AM." The document's second page contains four options that appear to be designed for a billing attorney to check to provide direction to administrative staff. These options read: "Fees and Costs [ ]"; "Fees Only [ ]"; "Costs Only [ ]"; and "Don't Bill [ ]." None of these options is checked.

Mr. Knox testified, and Respondent confirmed, that such PRE-BILLS were internal firm documents that billing attorneys and sometimes Mr. Knox would review before authorizing final bills to be prepared and sent to clients. This PRE-BILL does not show that Mrs. [H.] was ever billed for the August 12, 2008, county attorney conference or that either or both of them ever paid the tentative $300 charge. And there was no testimony that this particular charge was ever included in a final bill to Mrs. [H.] or paid by her.

Paragraph 10 of the complaint and amended complaint filed by the Disciplinary Administrator in this action incorrectly identified the date of the allegedly nonexistent county attorney meeting as February 1, 2008. Respondent's answer did not admit, deny, or state that he lacked sufficient information to respond to Paragraph 10. However, in Paragraph 19 of the complaint and amended com-

plaint, the Disciplinary Administrator alleged: "Respondent admits improprieties in his billing records associated with his representation of Mr. and Mrs. [H.] to the extent that he improperly billed for the meeting with the County Attorney." In his answer to the complaint, Respondent admitted the allegations of Paragraph 19.

The date of the county attorney conference was amended, without objection, from February 1, 2008, to August 12, 2008, at the opening of the panel hearing.

According to Mr. Knox' testimony before the panel, Respondent initially denied any mistake or intentional misrepresentation in the PRE-BILL recording the August 12, 2008, county attorney conference. Mr. Knox testified that he came upon the PRE-BILL as part of his regular review of such documents and that it raised a red flag because the case for Mrs. [H.] was no longer particularly active and 2 hours seemed too long for a county attorney conference. Mr. Knox then called the county attorney, who said he had not talked to Respondent in months. When Mr. Knox confronted Respondent with this information, Respondent said that the August 12, 2008, conference with the county attorney had occurred, that he had not gotten its date wrong in the PRE-BILL, and that he recorded 2 hours of time because it required him to drive from Lawrence to Jefferson County and wait until the county attorney was available to see him. After Mr. Knox told Respondent about Mr. Knox' conversation with the county attorney, Mr. Knox fired Respondent.

Respondent's answer to Paragraph 19 of the complaint, *i.e.*, his admission of a billing impropriety regarding the county attorney conference, was inconsistent with his initial version of events, as testified to by Mr. Knox. It was consistent, however, with his informal response to Mr. Knox' report to the Disciplinary Administrator, which stated generally: "I must acknowledge that I committed billing improprieties." And Respondent again admitted wrongful conduct during his testimony at the panel hearing: "At that time it was one that I saw, and that related to a billing of August 12th I believe. That billing . . . had indicated that I had had a meeting with the district attorney of Jefferson County. That meeting did not occur."

Now Respondent has again changed his story. He asserts in his exceptions:

"[T]here was a lack of any evidence that the conference with County Attorney Hayes did not occur. In fact, at the outset of the Final Hearing, the attorney for the disciplinary administrator withdrew allegation No. 10: falsely reported face to face meeting with Jefferson County Prosecutor on February 1, 2008."

Respondent also argues that evidence he billed for a nonexistent county attorney conference cannot be clear and convincing because, given Mr. Knox' intervention, Mrs. [H.] never received a final bill. In his brief to this court, Respondent argues that "[t]he only evidence that could conceivably support the amended charge is a Pre-Bill dated and generated on October 16, 2008."

Respondent's new arguments on the county attorney conference are shockingly disingenuous. After repeatedly admitting "impropriety" and that the August 12, 2008, county attorney conference did not occur, most recently in his testimony under oath at the panel hearing, Respondent now says there is scant or no evidence to support a KRPC 8.4(c) violation tied to the nonexistent meeting. Respondent also boldly misrepresents what occurred at the outset of his panel hearing, saying the Deputy Disciplinary Administrator withdrew the county attorney conference allegation. The transcript of the hearing could not be clearer: The Deputy Disciplinary Administrator merely amended the date of the fraudulently recorded conference, with no objection from Respondent's counsel.

Respondent's essentially legal argument that he cannot be held in violation of 8.4(c) for "billing" for the nonexistent county attorney conference because the PRE-BILL never made it into final bill form ignores the language of the governing KRPC provision. Although the panel's conclusion did pin the county attorney conference violation to billing of Respondent's client, such a billing was not necessary. KRPC 8.4(c) forbids conduct involving dishonesty, regardless of whether the mark ever learns of the con. Respondent admitted that the county attorney conference for which he recorded 2 hours to be billed to Mrs. [H.] never occurred. The recording of the time reflected in the PRE-BILL was conduct involving dishonesty. It matters not that Knox prevented the lie from reaching its intended target.

On this record, we adopt the panel's conclusion that Respondent violated KRPC 8.4(c) in connection with the nonexistent county attorney conference of August 12, 2008. Although Respondent did not ultimately succeed in delivering a fraudulent final bill for that conference to his clients, there is clear and convincing evidence that he had every intention of doing so, that he lied to Mr. Knox when that intention was discovered, that he did not change his story until Mr. Knox reported him to the Disciplinary Administrator, and that he is now more than willing to misrepresent the content of the record on this point to this court.

## DECEPTIVE PRACTICE DURING THE DISCIPLINARY PROCESS

Respondent's final argument is that the panel failed to support its description of his performance at the hearing as "evasive" with specific examples from the record. This failure, he asserts, means that there is no aggravating circumstance of a "Deceptive Practice During the Disciplinary Process."

We need not reach the question of whether the panel's failure to set out specific examples of evasive behavior or testimony undermines the existence of the aggravating circumstance at the time of the panel hearing or when the panel drafted its Final Hearing Report. We are satisfied that the existence of the aggravating circumstance is amply justified on the overwhelming negative power of Respondent's deceitful behavior in fashioning his exceptions, some of which contradict one another, contradict Respondent's earlier representations (some sworn), or flagrantly misrepresent the record. His assertion that the Deputy Disciplinary Administrator withdrew the county attorney conference allegation rather than amend its date is one example of such a misrepresentation. His assertion that testimony supported the idea that the July 26 date for the client conference was an unintentional error is another. There was no such testimony before the panel. This impression of Respondent's willingness to shade the truth was reinforced by Respondent's brief and by his oral argument before this court. The Deputy Disciplinary Administrator's description of Respondent's approach as a "shell game" is apt, and we have no hesitation in

finding the existence of the aggravating circumstance of a deceptive practice during the disciplinary process.

## SANCTION

Having rejected Respondent's exceptions to the panel's Final Hearing Report, we move to the question of appropriate sanction for his violations of KRPC 1.7(a)(2), KRPC 5.5(a), Supreme Court Rule 208(c), and KRPC 8.4(c). In addition to our discussion of the aggravating circumstance of a deceptive practice during the disciplinary process, we adopt the panel's findings of additional aggravating circumstances and no mitigating circumstances. Although Respondent's exceptions fleetingly referenced a few of the other multiple aggravating circumstances, the only one challenged in his brief was the one dealt with in the preceding section of this opinion.

At the panel hearing, the Deputy Disciplinary Administrator advocated for a 1-year suspension from the practice of law. Before us at oral argument, her recommendation changed to "at least" a 1-year suspension. Respondent points out that he sought probation. The hearing panel recommended a 6-month suspension from the practice of law.

This court is especially alarmed by Respondent's inability to appreciate or unwillingness to accept the existence of a concurrent conflict of interest between Mr. and Mrs. [H.]. Respondent's misrepresentations in his exceptions, brief, and oral argument also are troubling. These concerns cause a majority of the court to favor the longer 1-year suspension for which the Deputy Disciplinary Administrator advocated at the time of the panel hearing. A minority of the court would impose a 6-month suspension, as recommended by the panel.

IT IS THEREFORE ORDERED that Respondent Brian R. Johnson be suspended from the practice of law in the state of Kansas for a period of 1 year, beginning on the date of filing this opinion.

IT IS FURTHER ORDERED that before reinstatement, the Respondent be required to comply with Supreme Court Rule 218 (2011 Kan. Ct. R. Annot. 379) and undergo a hearing pursuant to Supreme Court Rule 219 (2011 Kan. Ct. R. Annot. 380).

IT IS FURTHER ORDERED that the costs of this proceeding shall be assessed to the Respondent and that this opinion be published in the official Kansas Reports.